UNITED STATES, Appellee

v.

JOSE O. RODRIGUEZ-SUAREZ, Private First Class,
U. S. Army, Appellant

4 USCMA 679, 16 CMR 253

No. 4667

Decided August 27, 1954

Lt Col Herman P. Goebel, Jr., U. S. Army, Lt Col James C. Hamilton, U. S. Army, and Capt Frank C. Stetson, U. S. Army, for Appellant.

Lt Col William R. Ward, U. S. Army, Maj Merle C. Rideout, Jr., U. S. Army, and 1st Lt Roderick V. Brown, U. S. Army, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

Following trial by general court-martial convened at Fort Brooke, Puerto Rico, on September 3, 1953, the accused was found guilty of making a false and fraudulent claim for dependency allowance, and making a false writing in connection with a claim for such allowance, both specifications being laid under Article 132, Uniform Code of Military Justice, 50 USC § 726. He pleaded not guilty, but was found guilty as charged and sentenced to a bad-conduct discharge, forfeitures of $55.00 per month for six months, and confinement at hard labor for six months. The convening authority approved, and a board of review in the office of The Judge Advocate General of the Army affirmed, without opinion. We granted accused's petition for review in order to determine whether the defense of mistake of fact was reasonably raised by the evidence and, if so, whether the instruction given by the law officer on that defense was incorrect and prejudicial.

Because of the nature of the issue, a detailed statement of the facts is necessary. As established by the prosecution and admitted by the defense, the accused on February 1, 1952, filled out and executed "Dependency Certificate" and "Allotment Authorization" forms in which he certified that his mother and father had no income and were dependent upon him for their financial support because the father was physically unfit to work. On the basis of those representations the accused claimed Class Q payments to be paid to his mother, as allottee, effective December 1, 1951. Payments commenced and his mother received monthly checks from the United States Government from December 1951 through May 1953, pursuant to the provisions of the Dependents Assistance Act of 1950, 64 Stat 794 (Public Law No. 771, 81st Congress). During this period, the total sum paid was $1,801.00, of which the Government's contribution was $1,-121.00. At that time, the regulations provided that allotments to parents would be granted only if the serviceman was contributing more than fifty percent toward defraying their expenses.

The father had maintained steady employment over the years and it was stipulated between the parties that during every month of 1952, and up to the time of trial, the accused's father was employed by the Post Quartermaster, Camp Losey, Puerto Rico, and was paid a salary of $118.00 a month.

In a voluntary pretrial statement, which was received in evidence, the accused stated: that he had joined the military service in November 1951; that a few months later he executed a request for dependency allotment for his parents in which he represented that his father was physically unfit to work; that his contribution to the support of the household was $90.00 per month, and that the household expenses were the same amount; that at the time he made the request for funds his father was working as a laborer at Camp Losey; that he had applied for the allotment because his father was suffering from arthritis and was thinking of leaving work; that prior to his entry into the military service he had contributed $90.00 monthly to his parents' support; that at the time he executed the application for the allotment he knew his father was working; that he misstated the facts because his father was sick; that his father was planning to leave work and he made a mistake in showing him unemployed; and that when he made the application for the allotment, the clerk had explained some of the regulations to him, but he did not remember them well.

To make the evidentiary chain complete, the prosecution introduced a document signed by the accused's father, entitled "Parent's Dependency Affidavit," dated March 1952, in which Mr. Rodriguez stated that his income for the past year was "None."

For the defense, accused's mother

680

testified that her son had started working when he was eighteen or nineteen years old; that he had always given all of his money to her for expenses of the household; that at the time he entered the Army she had been completely blind, but she had subsequently undergone surgery which had improved the sight in one eye; that her husband was unable to contribute to the support of his family because his salary was used to pay debts; that she did not remember whether her husband worked during 1952; and that after her son's allotment contributions were terminated her husband had supported the family.

The accused's father also testified for the defense. He stated: that he was employed as a laborer at Losey Field, Puerto Rico; that before the accused went into the Army, he had also been employed at the same place; that at one time he had a business establishment which had failed in 1947; that as a result of this failure, he had incurred debts and since that time had been using his own income to pay them; that at the time of his son's induction, he was in bad physical condition and was considering quitting work; that some time before February 1, 1952, he told his son that he was going to quit work very soon because of his health; that at that time the accused was still stationed in Puerto Rico and he saw him several times afterwards; that he did not quit work because he had so many debts; that some time after the accused entered the service, he received some forms from the Class Q Allotment Division at St. Louis, Missouri; and that because he did not read English, he had a girl fill out the forms and he signed them.

The accused testified at the trial and he stated that prior to his induction he had earned approximately $90.00 a month, all of which he had given to his mother for the support of his parents and sister; that after he went into the service his father told him two or three times that he was going to quit work because of his ill health; that he filed a claim for dependency allotment for his father and mother because he believed his father was going to quit work; that on the weekend occasions when he visited with his father, after he filed the claim, his father was at home and not working at the particular time; that he did not ask his father if he was still employed; that when he was in Korea, he sent all of his pay except $5.00 or $10.00 per month to his parents; and he was not certain whether it was before he left or after he returned from Korea that he found his father was still working, but he did not inform the officials of any change in his allotment; that the reason he stated in his pretrial statement that he knew his father was working was that his father was planning to quit his employment; and that prior to going to Korea he went home at least once a month but did not discuss financial matters because he did not want to disturb his mother who was in poor health.

The defense, to corroborate certain portions of accused's testimony, introduced in evidence a photostatic copy of a medical report on file at the Veterans' Administration, San Juan, Puerto Rico, showing that the accused's father was in poor physical condition during September 1951. In addition, evidence of the debts and financial obligations of Mr. Rodriguez and evidence showing the accused to be of good character and reputation was admitted.

At the conclusion of the trial, after conferring with the accused and counsel for both sides, the law officer ordered a recess to allow defense counsel time to present additional instructions and arguments to support his requests. At a conference held during the recess defense counsel submitted a request for an instruction on mistake of fact, and after the court-martial reopened, the law officer gave it in a modified form. However, the instruction given was tainted with the same error we pointed out in United States v. Rowan, 4 USCMA 430, 16 CMR 4. Hence, if the evidence in this case reasonably raised the issue, and the error was not induced, reversal is dictated by the ruling in that case. Therefore, the record must be searched to determine whether the defense of mistake of fact was placed in issue.

The specifications under which the

accused was tried alleged (1) that on or about February 1, 1952, he falsely and fraudulently made a claim for dependency allowance for the period from December 1951 through April 1953 by representing that his parents were dependent upon him for support in excess of fifty percent of their living expense; and (2) that on or about February 1, 1952, in connection with a claim for dependency allowance, he made a false statement to the effect that his parents had no income other than contributions from him and that his father was physically unfit to work. Both specifications allege that at the time the claim was executed and presented, the accused knew that the statements upon which it was based were false and fraudulent. The evidence is conclusive that the claim was prepared and submitted by the accused, and it is conceded that during the entire period in which dependency contributions were received by accused's parents, his father was employed at a salary of $118.00 a month. The only element remaining to be substantiated, therefore, is the knowledge on the part of the accused of the falsity of his statements.

We do not find any evidence in the record which suggests remotely that accused was mistaken about his father's employment on February 1, 1952. All of his testimony, combined from both the pretrial statement and his story on the witness stand, proves conclusively that his father was working at the time the statements were made; had been working since the accused first entered the military service; and that accused had never been informed to the contrary. The most the evidence shows in his favor is that at some unknown time in the future his father intended to quit. Despite his knowledge that his father was gainfully employed, he submitted a claim based upon assertions that on February 1, 1952, he was the sole source of financial support for his family, and that his father was unemployed. Even were we to assume good faith on the part of the accused for payments after the date the claim was executed, accused falsified about the previous period. He admitted that from December 1951 until February 1, 1952, a period of time prior to his presentment of the claim, but one for which he claimed payments, he knew of his father's employment. Nevertheless his statement represented an unemployed status for the entire period. While he claims an honest mistake of fact, in order to prevail on that defense it must be shown that his misconception concerned an existing fact. He may have honestly believed that his father might quit at some time in the future, but that was not what he represented. He was neither mistaken about his belief nor about his father being employed. He was only anticipating the happening of a contingency which did not occur. His belief that his father was going to quit work some time in the future does not exculpate his falsity in making a statement that the event had already happened. A mistake of fact may be a defense when criminal intent depends on knowledge of a particular fact and the mistake negates knowledge. But here the lack of knowledge necessary to support a mistake of fact is not present. We, therefore, believe that evidence necessary to raise the alleged issue is not in the record and that accused's testimony supports, rather than refutes, the prosecution's showing of knowledge of the falsity. Under those circumstances, we conclude the claimed defense was not raised reasonably as an issue and the law officer was not required to give any instruction thereon.

Although the law officer acceded to defense counsel's request and included an erroneous instruction on the proposed issue, the accused can not now profit by the error. The giving of an instruction on the alleged defense was induced by accused's request and even though it was modified and does not state the law correctly, it afforded the accused a defense he was not entitled to have submitted. He was benefited by that procedure, not prejudiced.

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.