UNITED STATES, Appellee

v

JESSE G. ALANIZ, Private First Class,
U. S. Marine Corps, Appellant

9 USCMA 533, 26 CMR 313

No. 10,634
Decided August 22, 1958

*Major R. D. Humphreys,* USMC, argued the cause for Appellant, Accused.

*Major Charles R. Larouche,* USMC, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles H. Beale, Jr.,* USMC, *Commander Craig McKee,* USN, and *Lieutenant (jg) John V. L. Ellicott,* USNR.

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was convicted by a general court-martial of seven offenses, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, involving the wrongful possession, use and sale of marijuana. He was sentenced to dishonorable discharge, total forfeitures, confinement at hard labor for thirty years and reduction in rank to private. The staff legal officer in his review recommended the disapproval of the court's findings upon wrongful possession of marijuana, expressing his view that the evidence upon which the court based these determinations of guilt was the product of an illegal search of the accused's residence and seizure of marijuana therefrom, and therefore inadmissible.

The convening authority acted upon his staff legal officer's advice by disapproving the court's findings of unlawful possession and reducing the sentence to dishonorable discharge, total forfeitures, and confinement at hard labor for twenty years, with reduction to the grade of private. The board of review, in affirming, did not pass on the search and seizure question. However, the accused, in his petition for review which this Court granted, asserts that his pretrial statement confessing two of the three offenses of selling marijuana to named individuals with which he was charged was inadmissible in evidence. The contention is made that the confession was tainted by an illegal search and seizure. The question at the threshold of this case therefore is the legality of that search and seizure.

The facts, insofar as pertinent to this appeal, are as follows: After receipt of information incriminating the accused, Naval investigators in conjunction with civilian authorities "staked out" accused's shack for a period of over twenty-four hours. The surveillance was unproductive until accused while approaching his shack at night was arrested by approximately six law enforcement officers in civilian clothes. Accused was handcuffed, the key to the shack was taken from his right hand pocket, and the subsequent search disclosed the presence of marijuana. Accused was then taken to the provost marshal's office where he executed an oral confession which was followed by a similar written statement the next morning.

The evidence as to whether or not the accused consented to the search of his shack, as to whether or not the Government agents offered to procure a search warrant, as to whether or not the Government agents employed force, and as to whether or not the accused was given an adequate Article 31 warning (Code, supra, 10 USC § 831) is conflicting.

### I

We first direct our attention to the question of the legality of the search and seizure. In United States v Berry, 6 USCMA 609, 20 CMR 325, we held that if the Government's justification for a search is the consent of a person whose property is searched, the Government must establish such by clear and positive testimony. In the instant case we are confronted by the accused's testimony that the circumstances of the arrest had put him in fear.

In Judd v United States, 190 F2d 649 (CA DC Cir) (1951), it was said that before a court holds a defendant to have waived his protection under the Fourth Amendment, there must be convincing evidence to that effect. In that case defendant was arrested without a warrant, booked on an open "investigation" charge, questioned for several hours, and then taken to his home some

**535**

distance away where the search was conducted. The court said:

".  .  . His statements while in jail, which are relied on as consent, may be summarized as: I have nothing to hide, you can go there and see for yourself. Conceivably, that is the calm statement of an innocent man; conceivably, again, it is but the false bravado of the small-time criminal. But, however it be characterized, it hardly establishes willing agreement that the officers search the household without first procuring a warrant. Comparable statements have been held insufficient where the victim of the search was safely in his home, his place of business, or in his automobile."

In the case of United States v Lantrip, 74 F Supp 946 (ED Ark) (1948), Federal officers went to the defendant's home, identified themselves, and stated they would like to search his premises. The defendant said, "Go ahead," or words to that effect. The court held this to be a peaceful submission to the law enforcement officers, an acquiescence in the search rather than a consent thereto. Accord, United States v Slusser, 270 Fed 818 (SD Ohio) (1921).

In the recent case of United States v Wallace, 160 F Supp 859 (DC), the defendant had been under arrest and interrogation for some time before giving the alleged consent to a search of his premises. No confession or inculpatory admission preceded the alleged permission to conduct the search. "In defendant's words, he was 'conned' and 'sweet talked' into stating that he did not object." The court commented:

"On these facts and under these circumstances the question is whether legal consent was given. The criterion in answering this question is set forth in Judd v. United States, 89 U.S. App. D.C. 64, 190 F. 2d 649, and briefly is as follows: Consent to such search and seizure must be proved by clear and positive testimony and it must be established that there was no duress or coercion, actual or implied. Where the defendant is under arrest the Government's burden is particularly heavy. Intimidation and duress are almost necessarily implicit in such situations, and if the Government alleges their absence it has the burden of convincing the Court that they are in fact absent. Paraphrasing this, the consent must be clearly shown to be free, uncoerced and voluntary. Under the above facts and considering the total atmosphere under which defendant stated that he had no objection to the search, I am of the opinion that his consent was not real, uncoerced and voluntary, but that he was tricked or coerced into saying he had no objection.

".  .  . That this distinction on the facts is a valid one would seem obvious, but it is recognized in the Higgins case, supra [93 U.S. App. D.C. 340, 209 F. 2d 820], where the Court stated that 'no sane man who denies his guilt would actually be willing that policemen search his room for contraband which is certain to be discovered.' "

There remains the serious question of why the Government agents had not procured a search warrant. They testified that they felt the need for the search to be immediate to prevent contraband from being removed from the accused's shack. However, we note that at least six Government agents participated in the arrest. Certainly leaving some to guard the shack while others procured a warrant would not be imposing an unreasonable requirement upon the arresting officers.

In United States v Jeffers, 342 US 48, 72 S Ct 93, 96 L ed 59, the Supreme Court pointed out that the prohibition against unreasonable searches and seizures by the Fourth Amendment does not place an unduly oppressive weight upon law enforcement officers and that the burden is on those seeking an exemption to the Amendment to show it.

As we have stated in reviewing the record of trial, the staff legal officer concluded, as a matter of fact, that the law officer had erred in holding the search was with the accused's consent, and that the evidence obtained therefrom was admissible and so advised the

convening authority. The convening authority clearly followed his staff legal officer's counsel and disapproved specification 1 of the Charge on the ground that the evidence of a search was inadmissible.

In United States v Massey, 5 USCMA 514, 18 CMR 138, we stressed the convening authority's almost absolute appellate reviewing powers. It is clear beyond cavil that this ▇▇▇▇▇ Court is not possessed of fact-finding powers, Article 67(d), Uniform Code of Military Justice, 10 USC § 867, and that we may not overturn a truly factual determination based upon the evidence of record made by intermediate appellate bodies possessed of fact-finding jurisdiction. United States v Bunting, 6 USCMA 170, 19 CMR 296; United States v Moreno, 5 USCMA 500, 18 CMR 124; United States v Moreno, 6 USCMA 388, 20 CMR 104. In the present case the factual determination of this controverted factual issue by the convening authority is binding upon this Court.

## II

In view of our holding upon the search and seizure question, the other assigned issues need not ▇▇▇▇▇ long detain us. Whether the results of the illegal search affected the voluntariness of the accused's later confession is a factual question which should have been, but apparently was not, considered by the convening authority. See United States v Dutcher, 7 USCMA 439, 22 CMR 229; United States v Bennett, 7 USCMA 97, 21 CMR 223.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Navy for resubmission to the convening authority for further consideration consistent with this opinion.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

As the principal opinion states, the issue in this case is whether the accused's confession to two of the three offenses of selling marihuana to named individuals with which he was charged was tainted by an illegal prior search and seizure. The convening authority approved accused's conviction of these offenses while disapproving the court's findings as to the accused's unlawful possession of such contraband. The convening authority supported his action with no findings of fact whatsoever, and I do not understand the cases of United States v Massey, 5 USCMA 514, 18 CMR 138; United States v Bunting, 6 USCMA 170, 19 CMR 296; United States v Moreno, 5 USCMA 500, 18 CMR 124; or United States v Moreno, 6 USCMA 388, 20 CMR 104, cited by the majority opinion, to hold that we are bound by a variation of facts set forth to support a legal point analyzed in the field review of a staff judge advocate. While in the instant case we cannot revive the specifications the convening authority dismissed, we can determine independently whether the law officer ruled correctly on the legality of the search. Under the concepts announced by the majority of the Court, I wonder what has happened to the codal authority of that functionary to determine that question.

Because I am of the opinion that we can review the ruling of the law officer, I address myself to the question of the legality of that search and seizure, for if they were reasonable we need not consider their possible effect on the confession, and in that event those findings approved by the convening authority cannot be set aside and ordered dismissed by this Court. Article 67(d), Uniform Code of Military Justice, 10 USC § 867.

The seizure of marihuana, which is contraband and therefore "property the possession of which is a ▇▇▇▇▇ crime," Harris v United States, 331 US 145, 91 L ed 1399, 67 S Ct 1098 (1947), is clearly lawful if obtained through a reasonable search. This narrows our preliminary question to the reasonableness of the search under the circumstances obtaining in this case.

According to the record of trial, the accused maintained civilian quarters,

described as a "shack," at 212 North Tremont Street, Oceanside, California. Upon information furnished by one Private Morales, this residence was placed under surveillance by criminal investigators from the Provost Marshal's Office of the Marine Corps Base at Camp Pendleton, California, acting in conjunction with deputies from the San Diego County Sheriff's Office. Prior to the establishment of this watch, Morales had been apprehended by the civilian police in possession of marihuana and turned over to military authorities. Under questioning he had implicated the accused as his and others' source of supply and the shack as the place of procurement. The law enforcement officers watched the place for two days without incident. Finally, at about 10 o'clock of the second night, the accused was observed in the vicinity and apprehended about twenty-five yards in front of his shack. Two of the military policemen testified at trial, and from their testimony we may reconstruct the Government's version of the search and seizure. One of the military policemen first approached the accused saying: "Jesse, you are under arrest and Article 31 applies." The accused replied, "Good evening, Sergeant Williams." Six other members of the surveillance team joined him and the accused was handcuffed and searched. The other military police witness, one Sergeant Gardella, then took charge, informing the accused he was suspected of possessing, using and selling marihuana; that anything he might say could be used against him in a court-martial; that any statement "would be strictly voluntary on his part"; and that he was not required to say anything. The accused acknowledged he was familiar with the provisions of Article 31. The agent then asked the accused for permission to search his quarters, stating that if the accused would not consent a search warrant would be obtained. The accused replied the search could be made then because he had nothing on the premises. Gardella asked the accused if he had a key to the shack and was told to take the key from the accused's right front pocket. A search of the shack, which lasted ap-

538

proximately an hour, finally yielded a large paper bag of dry, green vegetable matter from a concealed place, various particles found in clothes, and a partially smoked cigarette—all subsequently identified as marihuana. Throughout this sequence of events, the relationship was friendly. The questioning of the accused was done in a normal tone of voice, and neither violence nor threats of any sort were employed. Although Sergeant Gardella testified he felt that unless a prompt search was conducted, the contraband he suspected was cached within the shack would be removed, concealed, or disposed of by others involved in the trafficking scheme, the main thrust of the Government's justification for a warrantless search is placed upon the accused's consent.

United States v Berry, 6 USCMA 609, 20 CMR 325, holds that if the Government's justification for a search is the consent of the person whose property is searched, the Government must establish it by clear and positive testimony. To fairly evaluate the Government's testimony, I must say it dispels any illusion that the accused merely acquiesced in the search because he was submitting to lawful authority. From it alone a finding could be made that accused was given his free choice to permit a search immediately or delay it for the time it would take his apprehenders to procure a warrant; that he was at all times accorded reasonably courteous treatment; that he acknowledged he was familiar with his privilege not to say anything at all in response to questions; that he was not harassed, intimidated, or threatened; and that the accused told the authorities they could search at will because he had nothing to hide.

Even though the legality of a search is an interlocutory question to be decided by the law officer and the foregoing testimony would support his ruling, I will give consideration to the accused's testimony to determine whether it renders the prosecution's evidence to be less than clear and convincing. He testified specially on the issue of the legality of the search, and the strongest

part of his testimony is first related. He stated he was advised of the offenses of which he was suspected and that Article 31 was explained to him. But he contended he was not fully advised and denied having admitted knowledge of the Article. He asserted he did not volunteer the key to his shack, but instead that he denied having it in his possession until it was found on his person while he was being searched. He claimed he was "kind of" pushed or shoved along when he was led to the shack. And finally he contended he was overwhelmed by the presence of so many police officers.

If the testimony of the accused hereinabove related was clear and positive, I might be confronted with a more difficult problem, for mere compliance with the demands of police officials does not amount to consent. But the inconsistencies, inaccuracies, and uncertainties found within the accused's own testimony entitle it to little, if any, credence. His testimony upon consent was vacillatory. He admitted the sergeant asked for his consent. When asked if he did not say "yes" to the question, he answered he did not say that directly. He went on to state that he could not say if he consented or not. He then admitted he had, but later repudiated that by asserting his permission was not sought. Lastly, he stated he gave his consent because he "figured they— they would beat the daylights out of me or something—something of that sort." Similar inconsistencies stand out boldly in his testimony seeking to deny the officers' evidence that they offered him an option between consenting or delaying the officers until their return with a search warrant. He first denied that a statement about a search warrant was made. He then shifted to a failure to recall, and finally ended up by saying there was something said to the effect that the officers would obtain a search warrant. There are many other weaknesses in his story, but I have displayed enough inconsistencies to indicate why there was little, if any, doubt cast on the officers' testimony.

As previously stated, the law officer resolved the issue of the legality of the search in favor of the Government.

Therefore, unless we can say the Government did not adduce clear and positive evidence of the accused's consent, the law officer's interlocutory ruling that the search was lawful must be upheld. United States v Berry, supra; United States v Volante, 4 USCMA 689, 16 CMR 263. From my assessment of the facts on both sides of this controversy, I conclude, as did the law officer, there was clear and positive testimony by the Government that the accused, under no actual coercion, was given the opportunity to make the free and intelligent choice either to consent to an immediate but warrantless search of his quarters or to submit to a later search without his consent but with a warrant. He unequivocally and specifically chose not to postpone the inevitable. There was here no coercion through continuous pressure or demands by police to search the accused's abode; there was no flat statement on the part of the criminal investigators that this abode would be searched without consent; there were no preliminary steps indicating an entry by force would be attempted; and there is no testimony from which it can reasonably be inferred the officers would not take the time to obtain a search warrant had the accused elected to require them to do so. Here, the accused was informed he could extend the security of his home from search for as long a period of time as the law recognizes he may by the simple demand that the arresting officers obtain legal authority to enter. He had a fair opportunity to remain silent on their request but, for reasons best known to him, he elected to give them carte blanche to search within the shack. The major portion of the contraband found was so well concealed it required a lengthy search before it was discovered. From that it could be fairly inferred the accused concluded the search might be less intensive if he opened the door to the officers.

The closest case on facts I have found is United States v MacLeod, 207 F2d 853 (CA7th Cir) (1953). There the defendant asked the officers why they did not obtain a warrant to search.

**539**

They offered to do so, and the accused then said it would not be necessary. The court there held the defendant had expressly consented.

I have not overlooked defense counsel's contention that accused had no freedom of choice because he was overwhelmed by the presence of seven policemen at the scene of his arrest. But mere numbers alone have never equaled coercion. He was acquainted with the military police sergeant whom he first encountered; it appears that only the two military policemen who testified conversed with him; and there is not one iota of evidence that threats of group or individual force were intimated. He was handcuffed, but that was incident to arrest and, if he was "kinda pushed along," the sequence of events would place that physical contact after he had consented to the search. No delusion was practiced upon him, and his asserted belief that he was going to be physically punished could only have been rooted in his imagination. Fairly construed, this case does not come within the rule of mere acquiescence under submission to authority. Rather, it must be catalogued with those authorities which hold that an accused cannot support a contention that a search is unreasonable when he consents.

No good purpose could be served in analyzing the numerous cases relied upon by the majority. Assuming, without deciding, that they appear to support accused's contention, I think they are distinguishable from the case at bar. In no cited instance was the defendant afforded the opportunity to demand a search warrant before the search took place. In those cases, entry was gained without any suggestion that a warrant would be obtained if required, and the defendants involved were deemed to have acquiesced simply because they believed they had to yield to authority. In this instance, the accused could not have been misled on that subject.

As to the dimly phrased assertion in the majority opinion that it would have been convenient for the Government agents to procure a warrant, I think the following excerpt from United States v Rabinowitz, 339 US 56, 94 L ed 653, 70 S Ct 430 (1950), is sufficient answer:

"It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable* searches. . . . [S]earches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required. To the extent that Trupiano v United States, 334 US 699, 92 L ed 1663, 68 S Ct 1229, requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment."

I, therefore, decide that the search and seizure were reasonable in the circumstances of this case, and the question of their tainting the accused's subsequent confession is obviated.

II

The law officer assumed the voluntariness of the accused's pretrial confession was in issue, entirely apart from the search and seizure, for he gave the instruction on voluntariness which this Court held erroneous in United States v Jones, 7 USCMA 623, 23 CMR 87. This error is the source of the second issue.

In United States v Spivey, 8 USCMA 712, 25 CMR 216, a unanimous Court decided that if the law officer instructs on the voluntariness of a confession, we can go behind his ruling to ascertain if the issue was reasonably raised. There the Chief Judge, in speaking for the Court, stated:

"When a law officer instructs, or refuses to instruct, on the rules of law applicable to a particular issue, it does not necessarily mean that the evidence raises, or fails to raise, the issue for consideration by the court members. It may simply be that the law officer did not properly evaluate the evidence for the purpose of instruction, or that he was unduly cautious. United States v Greenwood, 6 USCMA 209, 19 CMR 335; United States v Archibald, 5 USCMA 578, 18 CMR 202; United States v Christensen, 4 USCMA 22, 15 CMR 22. The exact basis for the law officer's action becomes important when it is contended, as it is here, that he erred materially in the instruction given. It then becomes the responsibility of the appellate tribunal to review the evidence to determine whether or not it raises the issue which was the subject of the erroneous instruction. If no evidence is found to require the instruction, the error is not prejudicial to the accused. United States v Bateman, 8 USCMA 88, 22 CMR 312; United States v Rodriguez-Suarez, 4 USCMA 679, 16 CMR 253. In deciding a question of this kind the 'law officer's determination . . . should not lightly be disregarded by' the appellate tribunal. United States v Archibald, supra, page 579; United States v Morphis, 7 USCMA 748, 23 CMR 212. But, if it is determined that sufficient evidence does not exist to require the instruction, the error may be disregarded. United States v Greenwood, supra."

In this case, there is absolutely no evidence of involuntariness, and the language quoted above requires that we resolve this issue against the accused.

Therefore, I would affirm the decision of the board of review.