UNITED STATES, Appellant

v

DANIEL W. GWALTNEY, Chief Warrant Officer, U. S. Army, Appellee

20 USCMA 488, 43 CMR 328

No. 23,633

April 9, 1971

*Captain Gordon F. Bailey, Jr.*, argued the cause for Appellant, United States. With him on the brief were *Colonel David T. Bryant* and *Lieutenant Colonel Ronald M. Holdaway*.

*Captain Stewart Pettet Davis* argued the cause for Appellee, Accused. With him on the brief were *Colonel George J. McCartin, Jr., Captain Ira J. Dembrow*, and *Captain Albert J. Mainelli, Jr.*

## Opinion of the Court

DARDEN, Judge:

In this case the Court of Military Review set aside the finding and sentence and dismissed the single charge, holding that acceptance of the appellee's resignation by the Secretary of the Army abated the court-martial proceeding. The correctness of the Court of Military Review's action is now in question.

After electing trial by general court-martial consisting of a military judge only, Chief Warrant Officer Gwaltney was convicted of an unauthorized absence covering the period July 25 to August 26, 1969. He was sentenced to a dishonorable discharge and forfeiture of $100.00 a month for six months. The convening authority approved, but deferred the forfeitures until the sentence was ordered into execution. The Court of Military Review, however, set aside the findings and sentence and dismissed the charge because of collateral action by the Secretary of the Army. The Judge Advocate General of the Army certified the case, asking this Court to determine whether the Court of Military Review was correct in its action.

On August 26, 1969, a military policeman, accompanied by an Alabama State policeman, took the appellee into custody at his mobile home. Three days later sworn charges were filed against him. On September 2, under the provisions of chapter 5, Army Regulation 635–120,[1] Gwaltney

---

[1] "5–1. . . .

"b. The tender of resignation for the good of the service does not preclude or suspend disciplinary proceedings in a case. Whether such proceedings will be held in abeyance pending final action on a resignation tendered under the provisions of this paragraph is a matter to be determined by the commander exercising general court-martial jurisdiction over the officer concerned.

"5–2. Resignation in lieu of trial. a. A resignation for the good of the service submitted by an officer when court-martial charges are preferred against him will be forwarded by the commander exercising general court-martial jurisdiction, direct to The Adjutant General as outlined in paragraph 2–3."

submitted a resignation "for the good of the service" to the Adjutant General through intermediate military commanders. In this document the appellee stated that he did "not desire to appear before a court-martial or board of officers." Nonetheless, charges were referred to trial on October 1, and the trial took place twelve days later. The convening authority's approval of the conviction and sentence is dated October 31, 1969.

The Court of Military Review noted that ten days before he approved the findings the convening authority had endorsed Gwaltney's resignation by recommending its disapproval, reciting the court-martial sentence already adjudged. They also found that the Under Secretary of the Army had accepted the resignation on December 5, 1969, directing that a general discharge under honorable conditions be issued. A Department of the Army Special Order dated December 15, 1969, reflects the Secretary's acceptance of the appellee's resignation under the above conditions, effective on the "date of actual notice."

A majority of the Court of Military Review recognized that this Court has held, although not unanimously, that a discharge or an accepted resignation does not terminate jurisdiction of the appellate courts. See United States v Sippel, 4 USCMA 50, 15 CMR 50 (1954); United States v Speller, 8 USCMA 363, 24 CMR 173 (1957); United States v Robertson, 8 USCMA 421, 24 CMR 231 (1957); United States v Loughery, 12 USCMA 260, 30 CMR 260 (1961); and United States v Entner, 15 USCMA 564, 36 CMR 62 (1965). That court thought the doctrine of continuing jurisdiction resulting from earlier cases should not apply here because the Secretary of the Army and the appellee contemplated that the acceptance of the resignation and the separation that followed would vacate the court-martial

conviction. Exercising what it termed its "inherent power . . . 'to oversee the administration of criminal justice' in the Army," a majority of the Court of Military Review abated the court-martial and appellate proceedings in "the interests of justice." The Court of Military Review judge who concurred separately had no doubt that the charges should be dismissed if Gwaltney was to "receive the benefits of his understanding with the Secretary."

This Court does not possess fact-finding power. Article 67(d), Uniform Code of Military Justice, ▇▇▇▇▇ ▇ 10 USC § 867. "[W]e may not overturn a truly factual determination based upon the evidence of record made by intermediate appellate bodies possessed of fact-finding jurisdiction." United States v Alaniz, 9 USCMA 533, 537, 26 CMR 313 (1958), and the cases cited there. See United States v Phifer, 18 USCMA 508, 40 CMR 220 (1969).

Here, counsel for the appellee argues that the Court of Military Review *found as a fact* that ▇▇▇▇▇ ▇ Gwaltney's resignation resulted from the pending charge and that an agreement existed between the appellee and the Secretary of the Army that acceptance by the latter of the resignation would "constitute an action in lieu of trial." We are convinced that this argument is sound.

The principal opinion of the Court of Military Review explains that court's decision in these words:

". . . Here, the appellant's resignation stemmed from the existence of the charges. The two actions, therefore, had a common source, and they were subject to mutual relationships. For example, the Army regulations quoted above authorized the withdrawal of the resignation if the trial resulted in

---

Subparagraph 2–4*b*(2), Army Regulation 635–120, also provides pertinently:

"(2) A resignation for the good of

the service (chap 5) may be withdrawn if the officer's trial results in an acquittal or a sentence less than dismissal."

an acquittal or sentence involving less than a punitive separation. The regulations also discussed the commander's prerogatives to proceed with the trial or to suspend the proceedings because of the resignation. See United States v Rogan, 8 USCMA 739, 25 CMR 243 (1958). However, it is clear from the form of the resignation and the phrasing of the related regulations that the Secretary of the Army and the resignor contemplated that the acceptance of the resignation and resultant separation would be in lieu of conviction and sentence by a court-martial."

Since the decision by the Court of Military Review was one within its fact-finding power, we cannot say that its decision was incorrect. Consequently the certified question is answered in the affirmative.

Chief Judge Quinn concurs.

Ferguson, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I cannot agree that, by labeling an issue of law as a question of fact, this Court's jurisdiction to correct errors of the Court of Military Review may be defeated. That is precisely what has occurred here, and I would reverse the Court of Military Review for that reason. As it, however, acting within its jurisdiction, has obviously found the sentence inappropriate, I would affirm only so much of its action on the record as sets aside the punishment.

On August 29, 1969, the accused was charged with absence without leave, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. On September 2, 1969, he submitted his resignation for the good of the service, in lieu of trial by court-martial. The convening authority forwarded the letter of resignation, but recommended that it not be accepted.

Despite the pendency of the resignation, and as he was authorized to do by the pertinent regulations, the convening authority likewise referred the charges to trial on October 1, 1969; trial was had on October 12, 1969; and the resultant findings of guilty and sentence were approved by him on October 31, 1969. As required by Code, supra, Article 66, 10 USC § 866, the case was forwarded to Department of the Army for review by the Court of Military Review.

In the meantime, the letter of resignation—its condition of "in lieu of trial" shattered by the proceedings below—wended its weary, administrative way to the Office of the Secretary of the Army. On December 5, 1969, it was accepted by the Under Secretary, who directed accused's discharge from the service with a general discharge. Such was accomplished on December 15, 1969, by Departmental orders, effective on notice to the accused.

The Court of Military Review, based on these facts, abated the proceedings in "the interests of justice," as it found it clear from the form of the resignation and phrasing of the pertinent regulations that both accused and the Secretary of the Army contemplated that acceptance of the resignation "would be in lieu of conviction and sentence by a court-martial." It is this determination that my brethren term a finding of fact.

It is to be conceded that this Court does not possess fact-finding power and that the Court of Military Review does. See Code, supra, Article 66, and Article 67, 10 USC § 867. Moreover, we are not empowered to overturn "a truly factual determination *based upon the evidence of record* made by intermediate appellate bodies possessed of fact-finding jurisdiction." (Emphasis supplied.) United States v Alaniz, 9 USCMA 533, 537, 26 CMR 313 (1958); United States v Remele, 13 USCMA 617, 33 CMR 149 (1963). But it is this Court's function to determine whether the question is one of law or fact, and labeling it as the latter does not interfere with our authority. United States v Benson, 3 USCMA 351, 12 CMR 107 (1953);

United States v Hendon, 7 USCMA 429, 22 CMR 219 (1956).

Here, the Court's holding is nowhere near the prohibited factual arena. True, it may be said to have found that the Secretary and the accused agreed he was not to be tried if his resignation was accepted. Indubitably, that is a fact with which all men would agree, but it is not the sort of factual finding which circumscribes the appellate authority of this Court. In order so to limit us, the finding must be "based upon the evidence of record." United States v Alaniz, supra, at page 537. It must concern itself with the issues in the case, not with extraneous administrative factors bearing on the otherwise valid findings and sentence. This is so, because the Code commands the Court of Military Review to act "on the basis of the entire record." Code, supra, Article 66(c); United States v Carey, 11 USCMA 443, 29 CMR 259 (1960); United States v Fagnan, 12 USCMA 192, 30 CMR 192 (1961). As we pointed out in the latter case, at page 195, the " 'entire record' . . . encompasses the transcript and the allied papers, as well as any appellate brief prepared pursuant to the terms of Code, supra, Article 38."

Summed up, then, determinations of fact binding on this Court are those made by intermediate appellate authorities on the record below and not extraneous considerations which induce the judges there to "do justice." Justice under law is fair play, not an attempt to redress a grievance without regard to the law.

The real nub of the problem here, however, is not the fact of the Secretary's acceptance of the accused's letter of resignation, but the legal effect of that acceptance—a pure question of law. In my opinion, it should be resolved in favor of the Government.

First, it is well settled that the acceptance of the resignation and discharge of the accused does not abate the proceedings. United States v Speller, 8 USCMA 363, 24 CMR 173 (1957); United States v Robertson, 8

USCA 421, 24 CMR 231 (1957); United States v Loughery, 12 USCMA 260, 30 CMR 260 (1961); United States v Entner, 15 USCMA 564, 36 CMR 62 (1965). Jurisdiction once attached continues for all purposes until the proceedings involved are terminated by completion of appellate processes and execution of the sentence, and it is difficult to see how action taken long subsequent to a trial by authorities outside the judicial chain can affect an otherwise valid conviction. United States v Speller, supra. No exception to this principle, which we have so clearly and repeatedly enunciated, has been called to my attention.

Secondly, I cannot agree that the acceptance of accused's resignation "in lieu of trial by court-martial" following his conviction may serve as a vacation of that conviction or render the proceedings invalid. It should be noted the regulations under which the accused's resignation was submitted expressly provide that trial may, in the convening authority's discretion, proceed despite the consideration and forwarding of the letter. Army Regulation 635–120, paragraph 5–1*b*. It likewise provides that the letter may be withdrawn in the event of an acquittal or sentence not involving a punitive separation. Thus, it is apparent that accused's letter is not something which, even though acted upon by the Secretary at a date subsequent to trial, vitiates the conviction. Accused must have known at the time he submitted it that trial might well proceed and lead to findings of guilty.

The Secretary has no power unilaterally to vacate a court-martial conviction. His authority with regard to military appellate proceedings only enables him to "remit or suspend any part or amount of the unexecuted part *of any sentence*" or "for good cause, [to] substitute an administrative form of discharge for a discharge or dismissal executed in accordance *with the sentence* of a court-martial." (Emphasis supplied.) Code, supra, Article 74, 10 USC § 874.

In sum, administrative action by the Secretary concerned regarding the accused's resignation cannot affect a trial and conviction, which must necessarily have been foreseen by the accused despite the submission of his letter. Otherwise, "considerable confusion might be generated by having both executive and judicial action occurring at the same time." United States v Russo, 11 USCMA 352, 355, 29 CMR 168 (1960).

The Court of Military Review's action with regard to the sentence, however, presents another consideration. Here, the court is duty-bound to affirm only such sentence as it finds correct in law and fact and appropriate for the accused. It is empowered to approve no punishment at all. United States v Atkins, 8 USCMA 77, 23 CMR 301 (1957). Its authority in this area is plenary. United States v Turner, 15 USCMA 438, 35 CMR 410 (1965); United States v Gilley, 14 USCMA 226, 34 CMR 6 (1963).

Here, the court makes it clear that it considered the accused's sentence totally inappropriate in light of the Secretary's action. With that factual determination, we have no authority to intervene. United States v Alaniz, supra; United States v Foti, 12 USCMA 303, 30 CMR 303 (1961). I would, therefore, conclude that the court's action on the findings and sentence was correct in part and incorrect in part. In short, it was not empowered to set aside the findings for the reason stated but was authorized so to act with respect to the sentence.

In substance, what occurred here is that a resignation was erroneously accepted by the Secretary of the Army after the condition attached thereto had been rendered impossible of fulfillment. That was the Secretary's error, not that of anyone in the military judicial system whom Congress has alone empowered to act with respect to trials by courts-martial. We should not attempt to correct it at this level by straining the law to uphold what the Court of Military Review deemed to be justice, according to its own lights.

I would reverse the decision of the Court of Military Review as to the findings and affirm it as to the sentence.