UNITED STATES, Appellee

v

JAMES J. FOECKING, Commissaryman Second Class,
U. S. Navy, Appellant

22 USCMA 46, 46 CMR 46

No. 25,663

November 17, 1972

 

*Lieutenant James T. Newsom,* JAGC, USNR, argued the cause for Appellant, Accused.

*Lieutenant Commander Harvey E. Little,* JAGC, USN, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel G. L. Bailey,* USMC, *Commander Michael F. Fasanaro, Jr.,* JAGC, USN, and *Lieutenant James B. Ginty,* JAGC, USNR.

## Opinion of the Court

QUINN, Judge:

In the first of two issues presented by this appeal the accused challenges the admission in evidence of a pre-trial statement in which he implicated himself in the attempted murder of a chief petty officer. He contends the statement resulted from exploitation of a previous unauthorized search and seizure and an earlier improperly obtained statement as to his gun. See Wong Sun v United States, 371 US 471, 9 L Ed 2d 441, 83 S Ct 407 (1963); United States v Penman, 16 USCMA 67, 36 CMR 223 (1966).

Chief Roy Nixon was shot twice while asleep in his bunk. The shooting took place about 10:00 p.m. on November 19, 1970. The accused was suspected, and a search of his quarters produced a .38 caliber pistol, which, while fully loaded, "smelled" strongly of gun powder. About 12:40 p.m. the next day, the accused was questioned by special agents of the Naval Investigative Service. After being advised of his right to remain silent and to have counsel present at the interroga-

tion and acknowledging that he did not desire to exercise his rights, he made an oral statement, followed by a sworn and signed written statement, in which he admitted that he "recalled" standing outside Chief Nixon's window with his .38 revolver in his hand and that he heard two gunshots, after which he "ran back to . . . [his] hootch." He maintained that he did not "actually remember aiming" the gun and "shooting it." Over defense counsel's objection, the statement was admitted in evidence at trial.

The staff judge advocate concluded in his post-trial advice to the convening authority that the seizure of the accused's gun was illegal. The Court of Military Review agreed with that conclusion. Evidence in the record supports the determination; accordingly, we accept it as the starting point for our decision. See United States v Alaniz, 9 USCMA 533, 26 CMR 313 (1958).

 Improper conduct by enforcement officials in one phase of a criminal investigation does not bar the

**22 USCMA 47**

Government from continuing the investigation. More particularly, the Government's misconduct in a search and seizure of the property of an accused does not preclude later interrogation of him. The crucial inquiry in that kind of a situation is not whether the illegal act preceded the otherwise legal activity in point of time, but whether a particular item of evidence obtained in the latter was procured by exploitation of other evidence illegally procured during the former. Wong Sun v United States, supra. More picturesquely, the question is whether a later incriminating statement is "the fruit of the poison tree" of an earlier illegal search. United States v Crow, 19 USCMA 384, 387, 41 CMR 384 (1970). See also United States v Waller, 11 USCMA 295, 29 CMR 111 (1960).

■ United States v Bennett, 7 USCMA 97, 101, 21 CMR 223 (1956), commented on the empirical fact that, in an interrogation by investigating officials, confrontation of an accused with evidence seized in a prior illegal search may be "likely to produce a subsequent confession," thereby rendering the statement, like the illegally-seized evidence that produced it, inadmissible at trial. A likelihood of causation is not, however, tantamount to the fact of causation; it is only one factor to be considered with all the other evidence bearing on whether the accused voluntarily chose to speak instead of remaining silent. United States v Spero, 8 USCMA 110, 113, 23 CMR 334 (1957). The Government has the burden of proving that the accused's statement was voluntarily made. To the extent that some evidence indicates the statement was "the likely product of other evidence which was illegally obtained, the Government has a heavier burden than in a case in which the statement stands apart from any such possible taint." United States v Spero, supra, at page 113.

The strength of an inference of exploitation necessarily varies with the strength of the circumstances that give rise to the inference. Appellate defense counsel cite the lapse of "only

**22 USCMA 48**

a few hours" between the illegal search and the interrogation (see United States v Hundley, 21 USCMA 320, 45 CMR 94 (1972)), the "fact" that the accused knew his gun had been seized, and the "fact" that he was informed by the agents at the beginning of the interrogation that "they had his gun" (see United States v Crow, supra), as compelling a conclusion that exploitation of the illegal search produced the pretrial statement. Appellate Government counsel contend that the record actually supports findings of fact contrary to the latter two circumstances cited by the defense. Our reading of the record confirms the Government's position.

Agent Westbury testified that nothing was said about possession of the accused's gun, until after the accused had sworn to, and signed, the written statement, and the agents "were releasing" him to Lieutenant McMullen, the officer in charge; at that moment, Agent Spradley "said something to this nature." As to the defense assertion that the accused knew before the interrogation that his gun had been seized, appellate Government counsel describe it as simply "speculation." The assertion depends upon whether the accused, while standing outside Chief Nixon's hootch, overheard Lieutenant McMullen direct Chief Mayle to go to the accused's quarters to get the gun. It is significant that, while the accused contended that Agent Spradley told him, before the questioning began, that the agents had possession of his gun, he said nothing as to whether he knew before then that Lieutenant McMullen had ordered seizure of the gun.

■ More important than negation of the matters relied upon by the accused as evidence of exploitation of the illegal seizure of the gun are the accused's responses to questions probing into the actual impact upon him of the knowledge that his gun had been seized. Asked what "went through . . . [his] mind" when informed that the agents had his gun, he replied, "Nothing." Later in his testimony he was asked whether the

information conveyed to him at the beginning of the interview "raise[d] any particular fears or worries" in his mind; he answered by shaking his head in the negative. These responses leave little doubt that the accused did not regard the seizure of his gun as affecting his decision to speak and to reject the offer of counsel at the interrogation. The accused's own view of the absence of influence makes it unnecessary "to indulge in speculation concerning 'poisonous trees' and the fruits thereof." United States v DeLeo, 5 USCMA 148, 163, 17 CMR 148 (1954). We conclude, therefore, that the record supports the Court of Military Review's determination that the pretrial statement admitted in evidence against the accused did not result from exploitation of the earlier illegal search and seizure or the previous statement by the accused in regard to the gun. United States v Gwaltney, 20 USCMA 488, 43 CMR 328 (1971).

A second assignment of error concerns the effective date of the forfeiture portion of the sentence. The convening authority originally approved the adjudged sentence on July 31, 1971, and directed, as authorized by Article 57(a), Uniform Code of Military Justice, 10 USC § 857, that the forfeiture be effective as of the date of his action. On review, the Court of Military Review determined that the staff judge advocate's advice to the convening authority was inadequate and ordered a new advice and action.[1] The new action was completed on January 10, 1972. Again approving the sentence imposed by the court-martial, the convening authority directed that the forfeiture be applied to pay and allowances as of the date of his original action. The effect of applying the forfeiture as of that date, instead of the date of the second action, is to deny the accused almost $2500 in pay and allowances that would otherwise have accrued between July 31, 1971, and January 10, 1972.

Appellate defense counsel contend the convening authority could not legally approve the forfeiture as of a date earlier than the actual date of his action, whether his action was an initial review of the record of trial or a second review on remand by appellate authority. Three cases are cited as supporting this position. United States v Miller, 27 CMR 586 (ABR 1958); United States v Stewart, 24 CMR 637 (AFBR 1957); and United States v Ryals, No. 71–3306 (NCMR June 13, 1972).[2]

The Government contends that an action of the convening authority, set aside on appellate review, can still have legal effect. In United States v Dean, 7 USCMA 721, 23 CMR 185 (1957), the convening authority's action on initial review was set aside by a board of review because he had improperly considered matter outside the record of trial. The record was remanded to another convening authority for another review. The new convening authority rejected a finding of guilty of a lesser offense made by the original authority and approved a more severe sentence than the orig-

---

[1] The Court of Military Review's action is titled "Interlocutory Order." If the caption is intended to mean that the court retained jurisdiction over the case, while the convening authority again reviewed the record of trial, the order may be improper. See United States v Dean, 7 USCMA 721, 729, 23 CMR 185 (1957), opinion by Judge Latimer. Compare United States v Speller, 8 USCMA 363, 24 CMR 173 (1957). If the procedure was irregular, it does not affect the validity of the present appeal.

[2] United States v Miller, 27 CMR 586 (ABR 1958), specifically supports the accused. United States v Stewart, 24 CMR 637 (AFBR 1957), appears to be opposed to his view in that the board of review noted that the second action, which approved forfeitures for a period between the date of the original action and the date of the second action, was "not per se illegal." 24 CMR, at page 641. In United States v Ryals, No. 71–3306 (NCMR June 13, 1972), the Government indicated that it perceived no practical benefits from remanding the record and, therefore, consented to disapproval of the entire forfeiture portion of the sentence.

inal convening authority had approved. The accused challenged the legality of the second action. We pointed. out that as a convening authority has absolute discretion in "disapproving findings of guilty by the court-martial and in modifying the adjudged sentence" his action "fixes the limits of both the findings of guilty and the sentence in all subsequent proceedings in the case." *Ibid.*, page 724. The present action does not involve the discretion of the convening authority in modification of findings or sentence. What is involved is when a forfeiture is legally effective.

■■ Under Article 57(c), the general rule is that a sentence is "effective on the date ordered executed." Certain kinds of sentence cannot be ordered executed until completion of appellate review. Article 71, Uniform Code, supra, 10 USC 871. The sentence imposed here provided for a dishonorable discharge, confinement at hard labor for seven years, reduction in pay grade to E–1, and forfeiture of all pay and allowances. Since the initial action approved the sentence without modification, the sentence in its entirety could not be ordered executed. Article 71(c), Code, supra. However, under Article 57(a), the convening authority can make the forfeiture part of the sentence effective as of the date he approves it. For that designation to be operative the sentence must be "lawfully adjudged and approved." As the original approval of the sentence was not lawful, it follows that the dependent designation of the date the forfeitures were to be operative was similarly invalid. Accordingly, we agree with United States v Miller, supra, that the forfeiture part of the sentence could not be effective earlier than the date of the second, and only legal, action approving the sentence adjudged by the court-martial.

The decision of the Court of Military Review as to the sentence is set aside. The record of trial is returned to the Judge Advocate General of the Navy for resubmission to the court for further action consistent with this opinion.

Chief Judge DARDEN and Judge DUNCAN concur.