DECISION
RAICHLE, Senior Judge:
Counsel for the accused has invited our attention to errors raised by trial defense counsel concerning: (1) the validity of a search -of the accused’s person during a consensual search of his quarters, and (2) the admissibility of his subsequent pretrial statement. We have considered both contentions and reverse.
A brief recital of the facts is necessary to place the issues in perspective. Agent Scott and another Office of Special Investigations agent were conducting an investigation into possible drug abuse activity on the part of the accused. They called him into their office and advised him of his rights under Article 31, U.C.M.J., 10 U.S. C.A. § 831, at approximately 1027 on 2 May 1983. The accused denied any knowledge of illegal drugs. Agent Scott then asked the accused if he would consent to a search of his car and quarters. The accused agreed and signed a consent to search form. Upon arrival at the quarters, Agent Scott reminded the accused of his rights under Article 31, U.C.M.J. Before the search began, the accused asked Agent Scott if he could have a drink from the refrigerator. Agent Scott agreed and observed the accused retrieve a drink, close the refrigerator door, open the freezer door, remove something from the freezer, and place it in the back pocket of his fa *361 tigue uniform. The accused then asked Agent Scott if he could go to the bathroom.
Agent Scott testified that he was unsure what the item that the accused had removed from the freezer was, but suspected it was contraband. He discounted the possibility that it was a weapon because of its small size. He also testified that he was going to allow the accused to use the bathroom but wanted to find out what the accused had removed from the freezer. He was convinced that the accused wanted to go to the bathroom to dispose of contraband. He stated that he knew he could place the accused under apprehension but did not do so because the accused was an officer, was being cooperative, and he did not feel it would be appropriate to handcuff the accused. Accordingly, Agent Scott asked the accused to return to the kitchen and said, “I don’t know where to begin my search. Would you step in here and let me begin with you?” The accused replied, “Okay.” Upon searching the accused, Agent Scott found a small quantity of marijuana in the accused’s back pocket. Upon being confronted with the marijuana, the accused said, “Okay, you got me.” He then proceeded to explain how he had come into possession of the marijuana. After the accused’s explanation, the agents completed their search of the car and quarters. No further incriminating evidence was found. They returned to their office with the accused at about 1130. Agent Scott asked the accused if he would make a written statement, which was accomplished. After preparing the statement and again advising the accused of his rights under Article 31, U.C.M.J., Agent Scott had the accused sign the statement.
The military judge summarily rejected the theories of admissibility propounded by the government, i.e., consent, exigent circumstances, or search incident to apprehension, but ruled that the marijuana discovered during the search was admissible under the “inevitable discovery” exception to the exclusionary rule. See Nix v. Williams, — U.S. -, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); United States v. Kozak, 12 M. J. 389 (C.M.A.1982). He reasoned that Agent Scott could have asked the accused to place the item back in the freezer; if he had done so, it was inevitable that the contraband would have been discovered when the freezer was searched. Alternatively, he reasoned that Agent Scott could have apprehended the accused for interfering with the search of his quarters; if he had done so, the contraband then would have inevitably been discovered when the accused was searched pursuant to that apprehension.
We find that the evidence does not come within the inevitable discovery rule. That rule is as follows:
[Ejvidence obtained as a result of information derived from an unlawful search or other illegal police conduct is not inadmissible under the fruit of the poisonous tree doctrine where the normal course of police investigation would, in any case, even absent the illicit conduct, have inevitably led to such evidence.
People v. Fitzpatrick, 32 N.Y.2d 499, 346 N. Y.S.2d 793, 796, 300 N.E.2d 139, 141 (1973), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); United States v. Kozak, 12 M.J. 389, 392 (C.M.A.1982).
It is apparent from the terms of the rule and the cases which have applied it* that its scope is limited to secondary, or derivative, evidence, i.e., evidence which is derived from an exploitation of a prior illegality, be it a search or otherwise. It applies only to what has come to be known as the “fruit of the poisonous tree.” See Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). See also 3 LaFave, Search and Seizure § 11.4 (1978). In this case we are dealing not with the “fruit of the poisonous tree”, but the “poisonous tree” itself. Under these circumstances the inevitable discovery rule is not of assistance.
We agree that the authority to search his person was not freely given by the accused pursuant to informed volun *362 tary consent, but amounted to no more than mere acquiescence on his part. United States v. Vasquez, 22 U.S.C.M.A. 492, 47 C.M.R. 793 (1973); United States v. Alaniz, 9 U.S.C.M.A. 533, 26 C.M.R. 313 (1958).
We also agree that Agent Scott had probable cause to apprehend the accused prior to the search. Taken in the light most favorable to the accused, Agent Scott began the investigation with the barest of suspicion that the accused was involved in drug abuse. Prior to a consensual search of the accused’s quarters, however, Agent Scott witnessed the accused go to his freezer and remove a small, unknown object which he placed in his back pants pocket. The accused then requested permission to go to the bathroom. It is common knowledge that a person does not ordinarily carry frozen items in his back pocket. Agent Scott was also aware that it is not uncommon for people engaged in drug abuse to rid themselves of drugs by flushing them down a commode. Given the context of a drug investigation, these actions by the accused would give a reasonable man probable cause to believe that the accused was in possession of drugs. In spite of this, at no time did Agent Scott apprehend the accused either before or after the search. United States v. Kinane, 1 M.J. 309 (C.M.A.1976). Neither he nor the accused believed that an apprehension had taken place. Thus, the search performed by Agent Scott was not authorized as being pursuant to an apprehension.
Neither can the government use the exception to the exclusionary rule relating to searches performed under exigent circumstances. At the outset we note that the exigent circumstances exception is rarely applied to searches of the person. It most commonly applies to searches of dwellings, automobiles and containers. See, e.g., Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). However, its application to searches of the person was addressed by the Supreme Court in Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). In that case Murphy voluntarily appeared at the police station with his lawyer for questioning about the strangulation death of his wife. While he was there the police noticed a dark spot on his finger. Suspecting it was dried blood and knowing that evidence of strangulation, i.e., skin and blood cells, is often found under the fingernails of the perpetrator, the police asked Murphy if they could take fingernail scrapings. Murphy refused and began rubbing his fingers together and rattling change in his pockets. The police took the scrapings without his consent. Murphy was then allowed to leave the station, but was subsequently arrested about a month later. The Supreme Court found the fingernail scrapings admissible because the police had probable cause to arrest Murphy, although they did not do so; Murphy was in the process of destroying highly evanescent evidence (exigent circumstances); and the scope of the search was very limited, as opposed to a full search of the person.
We find the search in the instant case does not fall within the Cupp v. Murphy rationale. The scope of the search was not very limited but was much more intrusive than simply taking fingernail scrapings, the evidence was not highly evanescent, and any attempts to flush the evidence were precluded by the detention which preceded the search. Thus, the exigency exception fails.
Searches without a warrant are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Since the search at issue was without warrant and met none of the exceptions thus far delineated by the Supreme Court, it was error to admit the marijuana discovered during the search.
*363 We now turn to whether, in light of the illegal search, the subsequent confession of the accused should have been admitted. We think it is clear that the confession was the product of the illegal search and there was insufficient attenuation to purge this taint. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); see United States v. Schneider, 14 M.J. 189 (C.M.A.1982). Thus the confession should have been excluded. United States v. Kesteloot, 8 M.J. 209 (C.M.A.1980); See United States v. Waller, 3 C.M.R. 32 (C.M.A.1977).
For the reasons stated above, the findings of guilty of Specifications 1 and 2 of Charge II and the sentence are set aside. Specifications 1 and 2 of Charge II and Charge II are
DISMISSED.
CANELLOS and CARPARELLI, Judges, concur.

 See cases cited in Nix v. Williams, supra, — U.S.-, n. 2, 104 S.Ct. 2507 n. 2.