UNITED STATES, Appellee

v

JOSE G. SOTO, Private, U. S. Army, Appellant

16 USCMA 583, 37 CMR 203

No. 19,767

March 24, 1967

*Captain Robert R. Broxton* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Major David J. Passamaneck.*

*Captain Joel P. Schiff* argued the cause for Appellee, United States.

With him on the brief were *Colonel Peter S. Wondolowski, Lieutenant Colonel David Rarick,* and *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a general court-martial convened at Fort Hood, Texas, the accused was convicted of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for three years, and reduction. The convening authority approved only so much of the sentence as provided for the punitive discharge, forfeitures, and confinement at hard labor for one year. The board of review set aside the punitive discharge and further reduced the sentence to confinement at hard labor for six months and forfeiture of $50.00 per month for six months. We granted the accused's timely petition for review upon the assignment:

"THE LAW OFFICER ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY THE ADMISSION OF EVIDENCE OBTAINED BY AN UNLAWFUL SEARCH AND SEIZURE."

During the late evening hours of June 30, 1965, Private Vincente Robles-Rios' wallet was taken from under his pillow. On the the following morning, he discovered his loss. The wallet was subsequently located, but its contents, amounting to $64.00 in United States currency, were missing. Robles-Rios told a friend, Private First Class DeJesus, of his loss.

Immediately after reveille on July 1, 1965, Captain Raymond P. Wright, Commanding Officer of Robles-Rios' unit, was informed by his first sergeant of the theft. He commenced an investigation into the matter. A Private Rodriguez informed Captain Wright that he had been awakened on the preceding evening by the rattling of wall lockers in the tent which he and DeJesus occupied. He saw accused proceed from the area of the lockers to DeJesus' bed and bend over, as if he were feeling under it. DeJesus sat up and spoke to accused, who proceeded to tell him something about a fight involving another soldier. DeJesus told accused to leave the tent. When interrogated by Captain Wright, DeJesus refused to make any statement. He declared "that he wanted to find something out, then he would tell me everything at eleven o'clock." When Captain Wright inquired whether the matter involved the accused, DeJesus replied that it did. Thereupon, Wright ordered Soto to be brought to his, Soto's, tent and, in his presence, conducted a search of his belongings. Robles-Rios' money, identified through its serial numbers, was found in accused's boots. DeJesus and Rodriguez occupied a different tent from Robles-Rios. The latter's "home" was approximately twenty feet away in another row of the encampment.

On the basis of the foregoing information, the Government urges Captain Wright had probable cause to believe the accused had stolen Robles-Rios' money and to order a search of his possessions and person. In the alternative, it contends the search was made to prevent the disposition of criminal goods and was, therefore, likewise proper and lawful. We disagree.

As to the first contention, we see no evidence of probable cause to believe the accused had entered Robles-Rios' tent and taken his money on the evening in question. "Probable cause to search exists if the facts and circumstances justify a prudent man in concluding that an offense has been or is being committed, [and that the accused committed it]." United States v Ness, 13 USCMA 18, 32 CMR 18. Those facts must be made known to the commanding officer in order that his magisterial authority may be properly exercised. United States v Davenport, 14 USCMA 152, 33 CMR 364. Captain Wright had been informed by his first sergeant that an offense had been committed, but none of the information he subsequently obtained offers a reasonable basis for be-

lieving the accused to have been the perpetrator. At most, it placed the accused in DeJesus' tent at the appropriate period of time, but Robles-Rios resided some twenty feet away in another row of tents. To impute that accused's purpose was to steal from DeJesus on the basis of rattling of wall lockers and bending over DeJesus' bunk, as if he were feeling under it, is to induge in the sheerest conjecture.[1] Moreover, it in no manner connects him with a theft from a separate place and another individual. See United States v Hartsook, 15 USCMA 291, 35 CMR 263, and United States v Davenport, supra. Accordingly, we find no probable cause to have existed for Captain Wright's search.

Turning to the Government's second argument, i.e., that the search was necessary to prevent the disposition of criminal goods, we likewise must reject its application here. In United States v Lange, 15 USCMA 486, 35 CMR 458, we pointed out that such searches were permissible if immediate action was necessary "to prevent removal or disposition of stolen property." Lange, supra, at page 490. Such need, however, does not eliminate the requirement of probable cause. To the contrary, it permits searches only when based on probable cause and merely dispenses with the requirement that such be determined by the commanding officer. See Carroll v United States, 267 US 132, 69 L ed 543, 45 S Ct 280 (1925), and United States v Swanson, 3 USCMA 671, 14 CMR 89. And, as we have pointed out above, no probable cause existed for the action taken by Captain Wright in this case.

It follows, therefore, that the search and seizure which resulted in the discovery of the money taken from Robles-Rios was illegal, and the law officer erred prejudicially in overruling the timely defense objection to its receipt in evidence.

The decision of the board of review is reversed, and the record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

In my opinion, the law officer was justified in believing Captain Wright's testimony as to what Rodriguez and DeJesus-Yambo told him before the search. United States v Alaniz, 9 USCMA 533, 26 CMR 313.

These were the circumstances known to Captain Wright when he ordered the search:

(1) After reveille, the First Sergeant reported that sixty-four dollars were stolen from Private First Class Robles-Rios during the night. He also told the Captain he believed Rodriguez and DeJesus "had knowledge of the case." The Captain sent for Robles, who was then at the firing range, and called for Rodriguez and DeJesus.

(2) Rodriguez informed Captain Wright that sometime during the night he was awakened by "rustling of the lockers."[2] He then saw the accused at the bunk of Private First Class DeJesus, who was asleep; the accused was "bending over" the bunk and "feeling around" it. DeJesus awoke and told the accused to leave the tent.

(3) DeJesus admitted he had "knowledge of the circumstances," and acknowledged that the accused was involved; however, he did not want to disclose the details of his information until he discussed the matter "with someone else."

(4) The Captain also questioned "everyone that was available." He

---

[1] Interestingly, both Rodriguez and DeJesus testified and contradicted Captain Wright at the trial. Rodriguez denied telling Wright he had seen Soto in the tent on the night in question, although he admitted recognizing him by voice when he spoke with DeJesus.

DeJesus denied telling Captain Wright the accused was at all involved until after the search.

[2] In his testimony in the out-of-court hearing, Robles said the noise was "like someone trying to open a lock or lockers."

learned the accused had been seen in the "vicinity of the latrine" at a time "so late that everyone else was in bed." By fair inference, it also appears he ascertained no other member of the company, other than the guards on duty at the motor pool across the street, was out in the company area during the night.

(5) The accused's tent, Rodriguez' tent, and Robles' tent were in a line with each other. Each was at the head of a row of five tents; the accused's was in the first row, Rodriguez' in the second, and Robles' in the third. The accused's and Robles' tents were "right near" the latrine.

The majority attach no importance to the accused's presence and conduct in Rodriguez' tent. To me, these factors are most important. They indicate, with great probability, that the accused was intent on stealing; and he failed in DeJesus' tent only because DeJesus was awakened by his movements. As Judge Brosman observed in an earlier case, an inference of unlawfulness of purpose may be implied to a person who enters "in the dead of night . . . [a] barracks . . . not his own, and one in which lighting had been dimmed to sleeping strength." United States v Williams, 4 USCMA 241, 246, 15 CMR 241. The majority also see nothing significant in the close proximity of the several tents. In my opinion, they can be compared to the apartments of a multiple dwelling. On that basis, I think it altogether reasonable to infer that an intruder chased from one apartment in the dark of night was probably the same person who burglarized an adjoining apartment that same night, especially if both apartments had no locked door to bar entry.

Experience and reason convince me that Captain Wright had probable cause to search the accused and his effects. I would, therefore, sustain the law officer's ruling, and affirm the decision of the board of review.