JAMES DARWIN AUTRY, Fireman Apprentice,
U. S. Navy Reserve, Petitioner

v

RICHARD W. HYDE, Captain, Commanding Officer,
Naval Station, Boston, Massachusetts,

and

EARL MONAGHAN, Lieutenant (jg), Correctional Center
Officer, Naval Station, Boston, Massachusetts, Respondents

19 USCMA 433, 42 CMR 35

Miscellaneous Docket No. 70–24

May 20, 1970

*Harvey A. Silverglate, Esquire, Lieutenant John F. Dunlap, JAGC,*

USNR, *Lieutenant Rankin P. Bennett*, JAGC, USNR, and *Lieutenant Richard B. Schiff*, JAGC, USNR, counsel for Petitioner.

*Lieutenant Colonel Charles J. Keever*, USMC, and *Lieutenant James E. Akers*, JAGC, USNR, counsel for Respondents.

## Memorandum Opinion of the Court

Petitioner is confined in the Correctional Center, Headquarters First Naval District, Boston, Massachusetts, awaiting trial by general court-martial upon a charge of desertion, and other charges alleging offenses arising out of incidents occurring subsequent to the commencement of such confinement. He has filed a Petition for Writ of Habeas Corpus in this Court alleging his confinement is illegal, for reasons hereinafter set forth. Upon preliminary consideration of the petition, an order was issued to respondents requiring that they show cause, in writing, why the relief sought should not be granted. Thereafter, it appearing that the pending charges had been referred to a general court-martial and that the prosecution was ready to proceed to trial, this Court ordered the proceedings of said general court-martial stayed pending further order.

Appellate Government counsel, Office of the Judge Advocate General of the Navy, have filed a response to Order to Show Cause, and counsel for petitioner have submitted a memorandum of law in support of said petition.

The pleadings set forth all material facts bearing upon the merits of the petition and no substantial disagreement with respect to these facts exists. Moreover, the parties have adequately stated and supported their respective positions in their briefs. Because the facts are clear and undisputed and because all applicable precedents point to but a single conclusion, we consider oral argument unnecessary.

The following facts are disclosed by the pleadings.

On June 23, 1968, shortly after registering for the draft, petitioner enlisted in the Naval Reserve. Called to active duty on November 20, 1968, he was assigned to the U. S. S. McCAFFREY, as a fireman apprentice. While on a North Atlantic cruise, the vessel docked at Halifax, Nova Scotia, Canada. Petitioner left his ship July 20, 1969, allegedly without authority, and missed its movement on July 22, 1969. The petition avers that petitioner renounced his United States citizenship and applied for Land Immigrant Status in Canada through the Canadian Immigration Office in Halifax. We note that there is some dispute between the parties as to the manner in which the latter step was taken, but this is not material to the merits of any issue now before us, and need not be resolved.

On September 23, 1969, the United States Defense Attache at Ottawa, Canada, requested the Canadian authorities to apprehend and return petitioner to United States military control (Exhibit 27) pursuant to the provisions of section 10, Visiting Forces Act. The Canadian Minister of National Defense directed the requested apprehension and delivery on October 1, 1969. Thereafter, and in compliance with the Defense Minister's order, two Canadian military policemen, accompanied by a Halifax City Police official, apprehended petitioner in Halifax, October 16, 1969. Upon learning they were Canadian officials, petitioner denied their jurisdiction over him and requested permission to make a telephone call. The request was denied. While at the Provost Station awaiting delivery to United States custody, petitioner unsuccessfully requested a lawyer. Later, on the same day, Lieutenant Commander Hildebrand, United States Navy, accepted custody of petitioner at the Halifax International Airport, where they enplaned for Boston, Massachusetts. Lieutenant Commander Hildebrand did not advise him of his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831, nor of his constitutional rights in accordance with Miranda v Arizona, 384

US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966). Indeed, that officer's affidavit indicates he did not question the accused in any way. Although the pair conversed during the flight, the subject of their conversation is not material to the present issue. It is sufficient to observe that Hildebrand's affidavit makes no mention of a request by petitioner for counsel while in Canada.

Petitioner alleges that his arrest and subsequent return to the United States "were accomplished by means of an unlawful conspiracy between and among members of the American military establishment and the American Department of State, on the one hand, and members of the Canadian Department of Manpower and Immigration and the Canadian Department of Defense, on the other hand." In support of this assertion, he relies on a message from the United States Embassy to the Secretary of State that Canadian authorities intended instituting deportation proceedings against petitioner unless a request for his arrest under section 10, Canadian Visiting Forces Act, was made. The Canadian preference for action under the Visiting Forces Act, as well as the reasons for such preference, were also reported.

Under the provisions of Article 2(1), Uniform Code, supra, 10 USC § 802, petitioner, as a person "lawfully called or ordered into, or to duty in . . . the armed forces," is subject to said Uniform Code, and each of its pertinent provisions. Article 85 thereof, 10 USC § 885, proscribes desertion, and provides that the offender shall be punished as a court-martial may direct. This Article applies whether the individual is within the borders of the United States, or beyond them, and petitioner does not deny its applicability. Since the contract of enlistment creates a status, it would be ridiculous to suppose that one may legally avoid its attendant obligations by the simple expedient of leaving his ship. (See United States v Noyd, 18 USCMA 483, 40 CMR 195 (1969).)

Lieutenant Commander Hildebrand and other armed forces personnel of the United States are authorized to apprehend service personnel "upon reasonable belief that an offense has been committed and that the person apprehended committed it." (Article 7(b), Code, supra, 10 USC § 807.) The exercise of this power in Canada, however, is limited by the "Agreement Between The Parties To The North Atlantic Treaty Regarding The Status of Their Forces," June 19, 1951, 4 UST 1792, and by the Visiting Forces Act, Statutes of Canada, 1967–68, chapter 23. Paragraph 5(a), Article VII, of the Agreement provides:

"The authorities of the receiving and sending States shall assist each other in the arrest of members of a force or civilian component or their dependents in the territory of the receiving State and in handing them over to the authority which is to exercise jurisdiction in accordance with the above provisions."

Desertion by a member of the armed forces of the United States is an offense under the Uniform Code, as noted, but it is not a violation of Canadian law. Therefore, under paragraph 2(a), Article VII of the Agreement, only United States authorities have jurisdiction of the offense.

To complete the jurisdiction contemplated by paragraph 2(a), Article VII, supra, over one who has left his organization and has entered the Canadian civilian community, section 10 of the Visiting Forces Act provides:

"For the purpose of enabling the service authorities and service courts of a visiting force to exercise more effectively the powers conferred upon them by this Act, the Minister of National Defence, if so requested by the officer in command of the visiting force or by the designated state, may from time to time by general or special orders to the Canadian forces, or any part thereof, direct the officers and men thereof to arrest members of the visiting force or dependents alleged to have been guilty of offences against the law of the designated state and to hand over any person so arrested to the appropriate authorities of the visiting force."

Unquestionably the United States Navy is a "visiting force" within the meaning of the foregoing provision, and members thereof are, and at all pertinent times have been, stationed at Argentia, Newfoundland.

The record before us makes it abundantly clear that when the petitioner's absence was noted, and his ██ presence within the civilian community was ascertained, the Naval authorities, rather than abandon him—and thereby subject him to the deportation proceedings which would, or could, result in his involuntary return to the United States—elected to proceed under the Status of Forces Agreement and the Visiting Forces Act, and so advised the Department of State. That Department, of course, has the primary responsibility for invoking such international agreements.

Each step taken by the United States and the Canadian officials completely conformed to the provisions of the Agreement and of the implementing Visiting Forces Act. The claim that reliance on international agreements of the type here involved is evidence of a "conspiracy," is patently a fiction. In no way does this record support petitioner's claim.

It is next urged that denial of an opportunity to consult with counsel, who would then present a petition to the Canadian courts ██ to test the legality of his arrest, denied petitioner his right to counsel as guaranteed by the Fifth and Sixth Amendments to the Constitution of the United States, and his right to a hearing as guaranteed by the Sixth Amendment. The short answer to this complaint is that the provisions of the Constitution of the United States are not binding upon Canadian officials in the performance of their respective functions as defined by the laws of Canada.

Article VI, Constitution of the United States, provides, in pertinent part:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land. . . ."

Since every step pursued by the United States to effect the apprehension and return of the petitioner to military control conformed to the provisions of the Agreement, supra—the "supreme Law of the Land"—there is no basis for a finding that petitioner's present confinement is illegal. On this subject, Mr. Chief Justice Marshall, declared in Foster v Neilson, 2 Peters 253, 314 (U. S. 1829):

". . . Our Constitution declares a treaty to be the law of the land. It is, consequently, to be regarded in courts of justice as equivalent to an Act of the Legislature, whenever it operates of itself without the aid of any legislative provision."

In summary, petitioner became subject to military law upon reporting for active duty pursuant to his orders, and nothing had occurred in the interim to terminate that status.

The Petition for Writ of Habeas Corpus is denied, and the Order staying proceedings of the general court-martial is vacated.