**UNITED STATES**

v.

**Sergeant Danny FELTON, FR 266–02–2467 47th Organizational Maintenance Squadron 12th Flying Training Wing (ATC).**

**ACM 21863.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 22 April 1975.

Decided 14 Nov. 1975.

Appearances: Appellate counsel for the Accused: Colonel William E. Cordingly, Colonel Jerry E. Conner and Major Byron D. Baur. Appellate counsel for the United States: Colonel C. F. Bennett, Colonel Julius C. Ullerich, Jr., and Captain Frederick P. Waite.

**DECISION**

ORSER, Judge:

Tried by a general court-martial composed of a military judge sitting alone, the accused was convicted, consistent with his guilty pleas, of one offense each of conspiracy to wrongfully sell hashish and wrongful transfer of hashish and two offenses of

wrongful sale of that drug, in violation of Articles 81 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 934. He was also convicted, contrary to his plea, of an offense alleging the wrongful possession of hashish and marihuana, in violation of Article 134, Code, supra. In his action, the convening authority disapproved the conspiracy conviction,[1] but nevertheless approved the adjudged sentence providing for a bad conduct discharge, confinement at hard labor for 15 months, forfeiture of all pay and allowances, and reduction to the grade of airman basic.

Though several errors have been assigned by appellate defense counsel, in our opinion, the only issue meriting our consideration is the allegation that

> The Military Judge erred prejudicially by admitting in evidence on Specification 4 of Charge II the products of a search . . . not based on a lawfully obtained consent to search.

We agree.

On 28 February 1975, civilian law enforcement officers, assisted by their military counterparts, executed a warrant commanding that the off-base dwelling of an Airman Smith be searched for drugs and that Smith and the accused be arrested. For several hours preceding execution of the warrant, the officers had the area under surveillance on the basis of information that drug transactions were occurring at Smith's residence and that the accused, whose own dwelling was located next door, was involved in the activity. The officers suspected that numerous drug transactions occurred during their stake-out of the area. They saw numerous individuals known to them to be drug users arrive at Smith's house and make frequent trips between that house and the accused's. Included in the traffic, the officers saw, "a young girl, a young Mexican girl, walking back and forth between the two houses carrying a large paper sack." At some juncture prior to execution of the search warrant at the Smith residence, an individual identified in the record only as "Sergeant Riley" notified the officers that he had seen drugs "on the table" in the accused's residence while accompanying Smith there in an effort to obtain drugs from the accused.

At about the time the search warrant was executed at the Smith house, some of the officers proceeded to the accused's dwelling. Their initial purpose was to simply invite any people found present to come out and "secure the house;" however, the conduct of two female individuals they discovered on the premises caused a change of plan. Though one of the officers identified himself and repeatedly requested they exit the house, the occupants, who could be seen through a screen door, failed to respond. Motivated by the lack of cooperation of the occupants and to prevent the destruction of any drugs, the officers then entered the accused's home. While on the premises, they observed a large paper bag situated between the kitchen area and the living room. The bag was open and the contents, subsequently determined to be marihuana and hashish, could be clearly seen. The officers did not seize the contraband at that time nor did they conduct a search. According to their leader, they were solely concerned with drug disposal prevention and merely inspected each room to ascertain whether others might be present.

While the police officers were presumably still in the accused's house, Mr. Cerney, a local justice of the peace who had issued the Smith search warrant and then accompanied the officers to the scene, confronted the accused outside Smith's house and sought permission to search his dwelling. The accused was in custody, having been earlier arrested on the Smith premises in connection with the execution of the search warrant. At the time of his arrest he was also advised of his rights in accordance with Article 31, Code, 10 U.S.C. § 831, supra. Mr. Cerney testified he informed the ac-

---

1. This action was based on a determination with which we agree, that the conviction was barred because subsequent to trial a general court-martial acquitted the accused's sole co-conspirator of the identical offense. See Manual for Courts-Martial, 1969 (Rev.), paragraph 160; *United States v. Nathan*, 12 U.S.C.M.A. 398, 30 C.M.R. 398 (1961).

cused: "There is stuff sitting on the table there in plain view that has already been observed." The accused, cognizant that law officers were in his dwelling, inquired in an apparent perplexed manner: "You have already searched it haven't you?" Though conceding to the accused that officers were on the premises, the judge nonetheless assured him that no search had taken place, nor could be undertaken, without his permission. According to Mr. Cerney, the accused then responded: "No, go ahead, go ahead; you might as well go ahead." Mr. Cerney further related that just prior to commencement of the search, the accused was again asked if they had his permission and the accused reiterated that they did. During the ensuing search, the bag of marihuana and hashish was seized and subsequently admitted in evidence at trial over vigorous defense objection.

Appellate defense counsel argue these circumstances demonstrate that the accused did not freely consent to the search as the law requires, but instead, merely acquiesced to Government authorities in a *fait accompli*. In response, Government counsel, while not conceding the accused's consent was invalid, contend, impliedly as an alternative basis for the admissibility of the challenged evidence, that the police intrusion into the accused's house was a reasonable and limited undertaking for the singular purpose of preventing the destruction or removal of evidence. Once on the premises for that purpose, continue counsel, the contraband was in plain view and consequently subject to immediate seizure. See *United States v. Burnside*, 15 U.S.C.M.A. 326, 35 C.M.R. 298 (1965).

█ Government counsel's alternative theory of admissibility is premised on what is known as an exigency search. Pursuant to this doctrine, a search without a warrant is lawful:

. . . under circumstances demanding immediate action to prevent the removal or disposal of property believed on reasonable grounds to be criminal goods.

Manual for Courts-Martial, 1969 (Rev.), paragraph 152. Assuming arguendo the exigency search doctrine may have legitimate application in the circumstances at bar, unfortunately for the Government, at trial the evidence was presented in a manner designed to demonstrate only the consent theory of admissibility. As a consequence, though concededly factors tending to support an exigency theory are present (or alluded to), in our judgment, such evidence falls short of establishing a basis for the seizure apart from, and wholly independent of, consent. For example, though as observed, the person identified as Sergeant Riley is alleged to have seen the challenged contraband while on the accused's premises (inferentially, only a short time before the officers' intrusion), the evidence considered by the military judge contains no further specifics respecting the individual. Thus, such vital matters as his relationship to the enforcement team, and his credibility or the reliability of his information are, to an unacceptable degree, matters of conjecture and speculation.[2] Absent such evidence, we are unable to find that the Government sustained the heavy burden imposed in exigency searches of private dwellings: the dual requirements of probable cause for the belief that criminal property is located on the premises and a reasonable belief that immediate entry is necessary to prevent removal or disposal of the contraband. See *United States v. DeLeo*, 5 U.S.C.M.A. 148, 17 C.M.R. 148 (1954); *United States v. Lange*, 15 U.S.C.M.A. 486, 35 C.M.R. 458 (1965); *United States v. Soto*, 16 U.S.C.M.A. 583, 37 C.M.R. 203 (1967). Under the circumstances, the admissibility of the evidence is governed solely by the matter of consent.

█ As cogently stated by the Court of Military Appeals in the case of *United States v. Decker*, 16 U.S.C.M.A. 397, 37 C.M.R. 17 (1966) and most recently iterated in *United States v. Jordan*, 23 U.S.C.M.A. 525, 50 C.M.R. 664, 1 M.J. 145 (1975):

2. The Article 32, 10 U.S.C. § 832, investigation attached to the record appears to provide answers to these questions; however, such information was not presented to the military judge, and we, of course, cannot consider it for purposes of appellate resolution.

Consent to a search is not presumed. It must be proved by the Government "by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied." *United States v. Herberg*, 15 U.S.C.M.A. 247, 35 C.M.R. 219 (1965); *United States v. Berry*, 6 U.S.C.M.A. 609, 20 C.M.R. 325. Special caution is required when the consent is obtained from a person in police custody. *United States v. Justice*, 13 U.S.C.M.A. 31, 34, 32 C.M.R. 31. Whether there is consent or mere acquiescence in, or submission to, the apparent authority of a law enforcement officer depends upon the facts in each case, with precedents being "at best of doubtful value."

*United States v. Berry*, supra, page 613.

Here, not only was the accused in custody when his consent was sought, but more significantly, he could plainly see that Government enforcement officers were already in his house. Though Judge Cerney assured him that, contrary to appearances, no search had been made nor could be accomplished without his permission, it is inconceivable to us that those words were convincing, particularly when considered with the judge's advice that the authorities had seen drugs in the house. In the circumstances, the accused's language of permission that the authorities "might as well" search, indicates no more than resigned recognition of an accomplished fact and acquiescence in, or submission to, apparent police authority. See *United States v. Jordan*, supra. We conclude the Government failed to establish, by clear and convincing proof, that the accused freely consented to the search of his dwelling. See *United States v. Wilcher*, 4 U.S.C.M.A. 215, 15 C.M.R. 215 (1954); *United States v. Alaniz*, 9 U.S.C.M.A. 533, 26 C.M.R. 313 (1958). Since the evidence seized and subsequently considered by the court constituted the primary proof respecting the charge, its erroneous admission resulted in prejudice to the accused's *substantial* rights. See *United States v. Smith*, 13 U.S.C.M.A. 553, 33 C.M.R. 85 (1963).

For the reasons stated, the finding of guilty of Specification 4 of Charge II is incorrect in law and set aside. The remaining findings of guilty are correct in law and fact and are affirmed. A combined rehearing as specified by the Manual for Courts-Martial, supra, paragraph 81b (3), may be ordered in the convening authority's discretion. The convening authority may dismiss the specification in issue and reassess the sentence on the basis of the findings of guilty herein affirmed.

ROBERTS, Senior Judge, and SANDERS, Judge, concur.