UNITED STATES, Appellee,

v.

Sergeant Willie R. TANNER, SSN
572–60–1451, United States
Army, Appellant.

CM 434593.

U. S. Army Court of Military Review.

29 July 1977.

Colonel Robert B. Clarke, JAGC, Lieutenant Colonel John R. Thornock, JAGC , Captain Ralph E. Sharpe, JAGC, and Captain John Richards Lee, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel John T. Sherwood, Jr., JAGC, Major Steven M. Werner, JAGC, and Captain William C. Kirk, JAGC, were on the pleadings for appellee.

Before CLAUSEN, CLAUSE and COSTELLO, Appellate Military Judges.

## OPINION OF THE COURT

COSTELLO, Judge:

Appellant was convicted by a military jury of possessing about 10 grams of heroin in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. His sentence includes confinement at hard labor for three years, but he was tried before *United States v. Courtney* was decided and derives no benefit from that decision. 1 M.J. 438 (C.M.A. 1976); *United States v. Jackson*, 3 M.J. 101 (C.M.A. 1977).

He is attacking the receipt into evidence of that heroin seized by German police from his wife's purse after the auto in which they were riding was stopped by the same police. The propriety of that receipt turns on the applicability of the rule in *United States v. Jordan*, 23 U.S.C.M.A. 525, 50 C.M.R. 664, 1 M.J. 145 (1975) (*Jordan* I). If that opinion was law at the time of appellant's trial, the evidence produced by an exclusively German investigation and seizure must meet Fourth Amendment standards of admissibility.

The military judge made specific findings that the investigation and apprehension here were exclusively German activities. He further found that the searches of appellant and his wife were incident to a lawful apprehension, using United States standards. These findings, coupled with his earlier comments about the potential applicability of *Jordan* I, persuade us that he did undertake to follow that rule.

Appellant says we are bound by this determination as "law of the case," even though he also argues that the trial judge misapplied the rule. We are not bound by the trial judge's determination, however. The law of the case doctrine only provides finality in later proceedings to those adjudications made *on the first appeal* on substantially the same evidence. *Downie v. Pritchard*, 309 F.2d 634 (8th Cir. 1962); *Pyramid Life Ins. Co. v. Curry*, 291 F.2d 411 (8th Cir. 1961). Further, the rule is one of policy and its application is discretionary with the trial court; where error has occurred, even in a prior appeal, a court should not perpetuate it and may depart from its prior adjudication. *Potomac Passengers Assoc. v. C. & O. Rwy. Co.*, 171 U.S.App.D.C. 359, 520 F.2d 91 (1975) [Rehearing denied].

Therefore, we hold that we are not bound by the trial judge's determination of law. Our holding is predicated on the need to correct error and the fact that no trial outcome will be altered to the injury of appellant. The evidence he held admissible under *Jordan* I was equally admissible under the law extant before that opinion and we need go no further with a consideration of the admissibility of the evidence itself. *United States v. De Leo*, 5 U.S.C.M.A. 148, 17 C.M.R. 148 (1954); paragraph 152, MCM, 1969 (Rev.). Our reasons for finding an apparently applicable opinion of our higher court to be without effect are set out below.

Fundamentally the idea is that *Jordan* I was not promulgated as required for opinions to become operative decisions of the Court. The opinion was released by the Court on August 22, 1975, and routinely published as cited above. In the usual case the Mandate required by Rule 58 of the then-applicable Rules of Practice and Procedure, 40 C.M.R. xxxi, would have issued after 12 days. However, the same rule

provides for withholding the Mandate on some conditions, one being the filing of a motion for reconsideration. A "timely petition for reconsideration" was filed in this case by the Government and granted by the Court. "*Jordan II*", *United States v. Jordan*, 1 M.J. 334 (C.M.A. 1976) was issued on March 12, 1976. Only thereafter did the Mandate issue.[1]

We do not seize on this sequence in blind adherence to form or habit. There are substantial reasons for regularity, order and certainty in the promulgation of appellate decisions. They are, after all, law-making documents.[2]

■ Neither the decisions nor the opinions of appellate courts, however, are self-executing; cases must be returned to those lower levels where officials and parties can be ordered to implement the court's judgment. The device which usually communicates the judgment to those lower levels is the mandate. *Dalton v. Johnson*, 341 S.W.2d 596 (Mo.App.1960), *citing* 5B C.J.S. Appeal and Error §§ 1958, 1959.[3] The mandate demands action in compliance with an opinion of the court, even if the trial court is not specifically so admonished. *State v. Allison*, 384 S.W.2d 544 (Mo.1964) [En banc].

■ The term mandate is the one most frequently used in this context, but there is no magic in the term. The operative event is the communication of a directive from a higher court to a lower one, and it may be styled mandate, decree or judgment. Delivery for compliance is what counts. *United States v. Gardner*, 464 F.2d 614 (9th Cir. 1972); *Warren v. United States*, 123 U.S. App.D.C. 160, 358 F.2d 527 (1965). Always significant, as in *Gardner*, is the status of the case in the appellate court. There a duly certified copy of a judgment transmitted to the clerk of the lower court was held to have been the equivalent of a mandate because "no petition for rehearing or for a writ of certiorari was filed." *Gardner, supra*, n.2.

■ The significance of that status in Federal practice lies in the consequences which flow from filing a petition. Filing works a "stay" in the issuance of the mandate of the court. Rules 36 and 41, Fed. Rules App.Proc. 28 USCA. If no timely filing has occurred, a lower court may find a mandate in one type of document or another which has been delivered to it. However, where court rules and practice provide for the routine issuance of mandates after an opinion is uttered, the first writing which announces a decision is merely an opinion even though it purports to reverse the court below. *Commissioner of Internal Revenue v. Bedford's Estate*, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611 (1945). Our practice is similar. In the absence of a timely petition for reconsideration, mandates will issue routinely from the Court of Military Appeals under Rule 58, cited above.

Our Rule 58 and the federal equivalent, Rule 41, are well founded in considerations of regularity and orderliness. One threat to these values is illustrated by *United States v. Caraway*, 483 F.2d 215 (5th Cir. 1973), where the district court received a court of appeals' opinion before the time for issuance of a mandate had expired. Relying on the opinion, the district court dismissed the indictment. Meanwhile, and still within a proper time, the court of appeals decided on its own motion to rehear the appeal en banc. A sharply divided court determined that the appeal was moot.

That outcome was dictated by the status of the appellant. He had been freed by one court while another was withdrawing its first action to give the case further consideration. The relative rank of the courts did not matter, what counted was the action

---

1. A similar rule now appears as Rule 45. 3 M.J. at Rules p. 31 *et seq.*

2. As will be emphasized later, it is prudent to distinguish opinions from decisions or judgments. There was an opinion in this case after

the petition for reconsideration, but no new decision which affected Jordan the appellant.

3. *Followed* in *Tierney v. Tierney*, 290 So.2d 136 (Fla.App.1974) and *Crystal Tire Co. v. Home Service Oil Co.*, 507 S.W.2d 383 (Mo.1974).

taken by a court which affected the appellant, *i. e.*, which amounted to a disposition of the case. Consider a situation in which judges could promulgate opinions which did not affect the parties before them. The accountability for outcomes, both to persons and to the polity, is one of the major restraints on common law judges. Therefore, the "opinion" must lead to a result.

Thus it is that only the final orders and decisions of appellate courts make law for their constituencies. To hold otherwise in this case would produce the anomaly that all of the military community was affected by *Jordan* I, except Jordan himself, as to whom the case was not decided. Jordan, however, enjoyed a potential for alternation of his initial result which was quite high.[4] Therefore, we hold that *Jordan* I was not law for the military community until modified and promulgated by an appropriate mandate in "*Jordan* II."

We find that the search in this case was the product of German police activity from start to finish. A courtesy notification was made to American investigators, but they made no contribution to the search. Further we find that this search was properly conducted under local law and involved no conduct which should have shocked the conscience of the trial court. Thus, this case meets the *De Leo* and *Manual* standards which were in effect at the time of trial. *De Leo, supra*; paragraph 152, MCM, 1969 (Rev.); we note that it would also meet the *Jordan* II standards, were they applicable. We hold that the evidence was properly admitted and the conviction was warranted.

Accordingly, the findings of guilty and the sentence are *AFFIRMED*.

Chief Judge CLAUSEN and Senior Judge CLAUSE concur.

---

4. The grounds for reconsideration are that the court has erred in a way which materially affected the outcome. Correction will probably change the result. *N.L.R.B. v. Brown and Root, Inc.*, 206 F.2d 73 (8th Cir. 1953).