UNITED STATES

v.

**Sergeant Tommy L. MORRISON, FR 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. United States Air Force.**

**ACM 22594.**

U. S. Air Force Court of Military Review.

8 May 1980.

Appellate Counsel for the Accused: Colonel Larry G. Stephens and Colonel George R. Stevens.

Appellate Counsel for the United States: Colonel James P. Porter and Lieutenant Colonel William H. Seckinger, USAFR.

Before HERMAN, ARROWOOD and MILES, Appellate Military Judges.

DECISION

ARROWOOD, Judge:

In the accused's trial for possession of marijuana and cocaine in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, the defense sought to have the drugs, found as a result of a search by German customs officials, excluded from evidence under the rule established in *United States v. Jordan*, 1 M.J. 334 (C.M.A. 1976). Appellate defense counsel contend that the military judge's ruling admitting the drugs was error.

On 15 September 1978, the Air Force Office of Special Investigations (OSI) at Hahn Air Base, Germany, received a phone call from United States Military Police Customs office located at the German border that a Sergeant Jack Ravine, traveling with his wife, Donna K., had been arrested the previous day by German customs investigators for possession of drugs. OSI Special Agent Okland was puzzled over the information that Sergeant Ravine was traveling with his wife, for a previous investigation had shown that his wife was named Sunee and was residing in the United States.

Wanting more information on the border incident, and knowing that it would be normal procedure for the German customs investigators to notify local police in the area in which Sergeant Ravine resided, Agent Okland instructed his linguist to call the

local customs police to obtain more detailed information. Agent Okland was familiar with the rule established in *Jordan* and specifically instructed his linguist, "Please do not ask, in any way, shape or form, for any search by them."

The local customs police had not received a report of the incident, but solicited from the OSI the information they had obtained from the border. Based on that information the local customs police decided that an immediate search of Sergeant Ravine's quarters should be conducted. The search yielded marijuana and cocaine some of which was possessed by the accused, Sergeant Ravine's roommate.

The German customs investigator who conducted the search testified that the search was in accordance with their normal procedure and was not conducted at the request of the OSI.[1]

The rule set out in *United States v. Jordan, supra,* page 338, concerning the use of evidence obtained in a foreign search states:

> [W]henever American officials are present at the scene of a foreign search or, even though not present, provide any information or assistance, directive or request, which sets in motion, aids, or otherwise furthers the objectives of a foreign search, the search must satisfy the Fourth Amendment as applied in the military community before fruits of the search may be admitted into evidence in a trial by court-martial. If the Government seeks to use evidence obtained either directly or indirectly from a search conducted solely by foreign authorities, a showing by the prosecution that the search by foreign official was lawful, applying the law of their sovereign, shall be a prerequisite for its admission in evidence upon motion of the defense. In

addition, prior to admitting the evidence, the trial judge shall satisfy himself that the foreign search does not shock the conscience of the court (citations omitted).

Although the rule is not mandated by the Constitution, it was established for the same principal purpose: "to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment." *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

We believe the rule in *Jordan* was intended to deter only unlawful police conduct and not to stop or frustrate legitimate, aggressive and lawful police activity. Otherwise, the police would have to avoid engaging in lawful exchanges of information with the host nation that even minimal standards of police competence would dictate. The rule requires only that the United States police not be present at the search and that they refrain from inducing host police from doing for them what is unlawful for them to do themselves. If this were not the case, the principal purpose of the rule, that of deterring unlawful police conduct, would not be served.

In the case at hand there is no question that the information which set the search in motion was provided by American officials. However, we must look beyond the surface and determine whether the action of the OSI was a lawful and legitimate police function or a subterfuge for their inability to search the accused's quarters. The investigation which was initiated by the German customs inspectors with the arrest of Sergeant Ravine at the border was a matter which would properly prompt an OSI investigation. The inquiry made by them to obtain more details was a lawful and legitimate request for information as to an ongoing German investigation. At the time of the request there was no reason to be-

---

1. In the subsequent trial of Sergeant Ravine, *United States v. Ravine,* 8 M.J. 744 (A.F.C.M.R. 1980), a German police report stating that the search was conducted "[p]ursuant to an official request for assistance" was admitted into evidence. In that case, although the officer who made the report testified that the entry was a mistake, the military judge excluded the evidence derived from this same search citing *United States v. Jordan,* 1 M.J. 334 (C.M.A. 1976). That report was provided to the convening authority for his consideration in this case and is attached to the review. This evidence is not newly discovered evidence within the meaning of Manual for Courts-Martial, 1969 (Rev.), paragraph 109*d*(2); however, we did consider it as evidence favorable to the accused in deciding this case.

lieve the German police did not have the information or that the request would precipitate further action on their part. Although it was argued by defense that Agent Okland notified the German police in order to get around his own inability to search the quarters, we find no evidence to support such a conclusion. In fact, such conduct was denied by the agent, the linguist and the German investigator.

The evil which *Jordan* was intended to prevent is not present in this case. Therefore, we find that the American involvement in the search of the accused's quarters was not sufficient to invoke the rule in *Jordan* and thereby prevent the fruits of the search from being admitted into evidence.[2] Further, we find that this search was properly conducted under local law and involved no conduct which should have shocked the conscience of the trial court.

The remaining assignments of error, both of which relate to the search, have been considered and decided adversely to the accused. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

HERMAN, Senior Judge, and MILES, Judge, concur.

---

2. See *United States v. Tanner*, 3 M.J. 924 (A.C. M.R.1977), where a courtesy notification made to American investigators did not invoke *Jordan.*